UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELIJAH GREEN

              Plaintiff,                             Case No.:

                                                            **COMPLAINT**

    *-against-*

                                                             **JURY TRIAL**
                                                             **DEMANDED**

THE CITY OF NEW YORK *and*
DETECTIVE KENNETH ANDERSON, *Shield No. 1240*

              Defendants,

------------------------------------------------------------X

      Plaintiff, ELIJAH GREEN, by his attorneys Kenneth J. Montgomery and Alexis G. Padilla, complaining of the defendants, THE CITY OF NEW YORK and DETECTIVE KENNETH ANDERSON, *Shield No. 1240*, ("Defendant ANDERSON") upon information and belief, alleges as follows:

**PRELIMINARY STATEMENT**

      1.      This is a civil rights action in which the plaintiff, ELIJAH GREEN, seeks relief for the Defendants' violation of his rights as secured by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, and 42 U.S.C. § 1983. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

**JURISDICTION AND VENUE**

      2.      This action is brought pursuant to 42 U.S.C. § 1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred

upon this court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiff's constitutional and civil rights.

3. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

4. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## PARTIES

5. Plaintiff is a United States citizen of full age residing in Kings County, New York.

6. Defendant KENNETH ANDERSON is an NYPD Detective that investigated arrested and charged Plaintiff in connection with a heinous assault on a pregnant woman. At all times relevant herein Defendant KENNETH ANDERSON was a duly appointed Detective, officer, servant, employee and agent of the New York Police Department, a municipal agency of the City of New York. At all times relevant herein, Defendant ANDERSON acted under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the New York Police Department, in the course and scope of his duties and functions as a Detective, officer, agent, servant and employee of the City of New York, was acting for, and on behalf of, and with the power and authority vested in him by the City of New York and the New York Police Department, and was otherwise performing and engaging in conduct incidental to the performance of his lawful functions in the course of his duty. He is sued individually and in his official capacity.

7. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of the Defendant KENNETH ANDERSON.

**STATEMENT OF FACTS**

8. On March 28, 2014, at approximately 1:15 p.m. at 550 Sheffield Avenue in Brooklyn a woman named Mia Jones was viciously assaulted by two men in the vestibule of her apartment building. Ms. Jones was seven months pregnant at the time. As a result of the attack Ms. Jones gave birth to a still-born child on March 29, 2014. She also suffered serious injuries to her face and body, including a broken orbital socket.

9. Police immediately identified Ms. Jones' longtime boyfriend and the father of the unborn child, Torey Branch, as a potential suspect based on Ms. Jones' claim that she recognized his eyes, physique, clothing and voice during the attack despite the fact that both men's faces were covered by ski masks and tightened hoods.

10. Ms. Jones did not immediately identify the second individual nor did she offer a description of the individual, which is notable considering that Plaintiff's has distinctive left eye due to a prior condition and because Ms. Jones would later say that she recognized Plaintiff because of this distinction.

11. On April 1, 2014 Mr. Branch was arrested and charged in connection with the attack.

12. On April 3, 2014 Mia Jones contacted the police and informed them that after reviewing Mr. Branch's Instagram page she was sure that she recognized the second individual from a picture that was taken at a night club on the night of the attack.

13. On April 3, 2014 Mia Jones, who was still in the hospital as a result of the attack, told Defendant ANDERSON, a NYPD Detective based out of the 75th Precinct in Brooklyn that the Instagram picture of Plaintiff matched her recollection of the individual who she claimed punched her and put her in a chokehold even though his face was covered with a ski mask and a hood at the time of the attack.

14. In addition to Ms. Jones' statement, Defendant ANDERSON was also in possession of footage of the attack from the building's security cameras.

15. This footage, which was taken from multiple cameras, depicted the entire attack.

16. In the footage, it is visibly obvious that the second perpetrator is significantly smaller than Torey Branch. Plaintiff is taller than Torey Branch.

17. On April 9, 2014 Plaintiff was arrested in connection with the attack on Mia Jones.

18. Plaintiff did not immediately retain counsel and initially cooperated with Defendant ANDERSON and the other detectives who interrogated him in connection with the crime.

19. Plaintiff informed Defendant ANDERSON and the other Detectives that he was home with his girlfriend, their children and her mother at the time of the attack.

20. Plaintiff also informed Defendant ANDERSON that Ms. Jones was a complete stranger to him and that he had never before spoken or communicated with her in any way.

21. Despite Plaintiff's protestations of innocence and the video footage which clearly depicts an individual that is significantly smaller than Plaintiff, Defendant ANDERSON charged Plaintiff with nine felonies in relation to the attack, including an illegal act of abortion in connection with the death of Ms. Jones' child.

22. Following his arrest, Plaintiff retained counsel at a personal expense of $10,000.

23. In the days subsequent, Plaintiff's name and image appeared in numerous major newspapers throughout the city and online in connection with reports of the attack and its aftermath.

24. At his arraignment in Brooklyn Criminal Court, Plaintiff was offered a bail of $50,000. He posted bail the following day with a combination of $7,000 in cash (which ended up being the total fee for the bond) and his primary residence as collateral.

25. In the weeks following publication of his arrest, Plaintiff was forced to endure intense public humiliation, embarrassment and ridicule.

26. As a result of the publicity, Plaintiff elected to resign as a student at the College of New Rochelle after he was encouraged by an administrator to withdraw in light of the charges.

27. At no time during this course of events did Defendant ANDERSON have probable cause to arrest Plaintiff.

28. At no time during this course of events did Defendant ANDERSON have probable cause to charge Plaintiff in connection with the attack on Mia Jones.

29. When he arrested Plaintiff and charged him with felony crimes in connection with the attack on Mia Jones, Defendant ANDERSON ignored exculpatory evidence, chiefly the surveillance tape that captured an individual who was visibly smaller than Plaintiff. It should be

noted that it was precisely this videotape which would eventually form the basis for the Brooklyn District Attorney's decision to drop all charges against Plaintiff in connection with the attack on Mia Jones.

30. Additionally, at the time of the decision to arrest and charge Plaintiff, Defendant ANDERSON knew or should have known that Mia Jones could not have identified Plaintiff's face because it was covered by a ski mask and a hood.

31. Defendant ANDERSON also knew or should have known that Mia Jones had suffered blows to her head and eyes and that she was suffering from intense emotional and psychological trauma that would prevent her from making an accurate and reliable identification of the second assailant.

32. Lastly, Defendant ANDERSON knew or should have known that Plaintiff has a distinct eye condition and that Mia Jones did not mention this condition in any of her statements about her assailants until after she viewed Torey Branch's Instagram page and found the picture of Plaintiff and Mr. Branch on the night of the attack.

33. As a result of Defendant ANDERSON ignoring evidence that was in his possession and that he knew or should have known would to be exculpatory, Plaintiff was prosecuted for a heinous crime for which he was completely innocent.

## AS FOR A FIRST CAUSE OF ACTION
### *DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983*

34. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

35. All of the aforementioned acts of Defendant ANDERSON were carried out under the color of state law.

36. All of the aforementioned acts deprived Plaintiff of the rights, privileges and

immunities guaranteed to citizens of the United States by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

37. The acts complained of were carried out by Defendant ANDERSON in his capacity as a police officer, with all actual and/or apparent authority afforded thereto.

38. The acts complained of deprived plaintiff of his rights:

    A. To be free from malicious prosecution; and

    B. To receive equal protection under the law.

## AS FOR A SECOND CAUSE OF ACTION

### *MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 AGAINST THE CITY OF NEW YORK*

39. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

40. The CITY OF NEW YORK directly caused the constitutional violations suffered by Plaintiff, and is liable for the damages suffered by Plaintiff as a result of the conduct of the Defendant Police Officers. The conduct of the Defendant Police Officers was a direct consequence of inadequate training and supervision of police officers by Defendant CITY OF NEW YORK and its agent, the New York Police Department.

41. At all times relevant to this complaint Defendant CITY OF NEW YORK through its agent, the New York Police Department, had in effect policies, practices, and customs that allowed for a Detective to move forward with charging an individual when there is clearly exculpatory evidence in that Detectives possession.

42. At all times relevant to this complaint it was the policy and/or custom of the CITY OF NEW YORK to inadequately train, supervise, and discipline its police officers, thereby failing to adequately discourage reckless misadventures of the sort described in this complaint.

43. As a result of the policies and customs of the CITY OF NEW YORK and its agency the New York Police Department, police officers – including the Defendant ANDERSON – believe that their unconstitutional actions will not result in discipline but will in fact be tolerated.

44. The wrongful polices practices and customs complained of herein, demonstrates a deliberate indifference on the part of policymakers of the CITY OF NEW YORK to the constitutional rights of persons within the city, and was the direct and proximate cause of the violations of Plaintiff's rights alleged herein.

**WHEREFORE,** plaintiff demands judgment in an amount to be determined by a jury, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated: 02/20/2016
      Brooklyn, NY

                                      NORMAN KEITH WHITE
                                      ALEXIS G. PADILLA, ESQ.
                                      KENNETH J. MONTGOMERY, PLLC.
                                      *Attorneys for Plaintiff Elijah Green*
                                      198A ROGERS AVENUE
                                      BROOKLYN, NY 11225
                                      917-238-2993

                        By:    */s/Alexis G. Padilla*
                               ALEXIS G. PADILLA